**Department of Justice**
**United States District Court For**
**The District of Massachusetts**
1 Courthouse Way
Boston, MA 02210

Docket No.: CC-05-0046

05 11300 NMG

Ileana Valdez )
)
v. )
)
D E A )
)

Claim Made Pursuant to Title 18, U.S.C., Section 983(a)(2)(D)

Property being Claimed: $ 46,950 U.S. Currency

Claimant – Ileana Valdez

Claimant Interest in Property – Owner

Seizure Date: 2/3/05

Seizure Place: Boston

Asset ID:   05-DEA-447287

Case Number: CC-05-0046

### AFFIDAVIT OF ILEANA VALDEZ IN SUPPORT OF REQUEST FOR REMISSION/MITIGATION OF ASSET FORFEITURE

I Ileana Valdez under oath state as follows:

1. My name is Ileana Valdez. I am 26 years old. My date of birth is July 3, 1979.

2. I have a 4 year old son, Christopher Presinal, date of birth June 9, 2001.

3. My address is 60 Sixth Avenue, #2, Quincy, Massachusetts 02169.

4. Prior to that address, I lived at 40 French Street, #26, Quincy, Massachusetts 02169.

5. I am a naturalized United States citizen. My passport page is included as Exhibit 1.

6. I have absolutely no criminal history, not having appeared in any Court whether in the United States or elsewhere, on any charge.

7. I currently work at Hampton Inn, a hotel in Boston, Massachusetts.

8. Prior to working at the Hampton Inn, I worked in my own business – Ileana's Multi-Service. Exhibit 2.

9. On or about February 3, 2005, I was stopped at the Logan Airport by Drug Enforcement Agents.

10. I was carrying with me $ 46,950 in U.S. currency en route to Texas.

11. The Drug Enforcement Agents suspecting the money to be drug related, seized the U.S. currency.

12. Prior to seizing the currency, the Agents questioned me about the funds.

13. The agents asked me where I was headed. I stated that I was going to Texas.

14. They asked me what I was going there to do. I informed them that I was planning plastic/cosmetic surgery on my buttocks and breast.

15. The agent looked at my buttocks and told me that I do not need an operation that I had a nice body. He asked to see my buttocks. I refused but told him I would let a female officer do so.

16. The agent tried to get me to admit that the money was drug related. I refused because it was not.

17. I have never used, sold or trafficked in drugs or any other substance. I have no criminal history.

18. I have always kept significant amounts of cash at my home because of problems I anticipated with funds I had with the banks and a car incident.

19. In 2003, my friend was in an accident with my car. The insurance company refused to pay and I was held liable for the loss. The loss was significant, so I proceeded to withdraw all my money from two banks because I feared that I

19. would be placed in collection and my creditors would attach the funds I held in two banks.

20. In 2003, I withdrew more than twenty thousand dollars from two banks, Sovereign Bank and Fleet Bank, now Bank of America. Sovereign Bank had the lien on the car.

21. Over the last two years, I have sold one business and two houses.

22. The two houses were owned jointly with my common law husband, Elvis Presinal, the father of my four year old son.

23. One house was located on 11 Jess Street, Jamaica Plain, Massachusetts 02130. It was sold for $ 265,000. A copy of the Purchase and Sale Agreement is included as Exhibit 3.

24. The other house was on 68 Williams Street, Jamaica Plain, Massachusetts 02130. It was sold for $ 500,000. A copy of the Purchase and Sale Agreement is included as Exhibit 4.

25. I also owned a business named Ileana's Multi-Service that was located at 1446 Dorchester Avenue, Dorchester, Massachusetts 02122. The Business Certificate from the City of Boston is included as Exhibit 2.

26. In May 2004, I sold the business for $ 23,500. A copy of the Executed Purchase and Sale Agreement is included as Exhibit 5.

27. I have never and will never engage in any illegal activity or contraband.

28. My businesses have all been legitimate. I have often worked two jobs to support myself and my family.

29. Had I been engaged in drug activity, my criminal history would show, otherwise.

30. I was very distraught and depressed when the seized funds were associated with drug activity, especially, considering, the fact that I had worked so hard to accumulate those funds.

31. I suffered much humiliation and indignity when the male agent asked to see my buttocks and stated that my buttocks looked good and I did not need any operation.

32. I have no reason to make any false statement to the United States or to the Court.

33. The money that I was carrying with me was from my business ventures in real estate and my multi-service business.

34. I intended to do cosmetic operations in Texas. Part of the funds were to be used for that purpose as well as for my hotel stay and recuperation expenses since I did not know how much it would cost. Besides, I did not want to leave all my funds in my house as I did not know for how long I was going to be in Texas.

35. I humbly and respectfully petition the Office of Forfeiture Counsel to remit the forfeiture.

36. The forfeiture has resulted in severe hardship to me and my family. I have found it very difficult to support my family and my parents who depend on me for assistance.

I give this statement under the pains and penalties of perjury

_____
Ileana Valdez                                    Date:   June 21, 2005

EXHIBIT 1

The Secretary of State of the United States of America hereby requests all whom it may concern to permit the citizen/national of the United States named herein to pass without delay or hindrance and in case of need to give all lawful aid and protection.

Le Secrétaire d'Etat des Etats-Unis d'Amérique prie par les présentes toutes autorités compétentes de laisser passer le citoyen ou ressortissant des Etats-Unis titulaire du présent passeport, sans délai ni difficulté et, en cas de besoin, de lui accorder toute aide et protection légitimes.

El Secretario de Estado de los Estados Unidos de América por el presente solicita a las autoridades competentes permitir el paso del ciudadano o nacional de los Estados Unidos aquí nombrado, sin demora ni dificultades, y en caso de necesidad, prestarle toda la ayuda y protección lícitas.

SIGNATURE OF BEARER/SIGNATURE DU TITULAIRE/FIRMA DEL TITULAR

NOT VALID UNTIL SIGNED

PASSPORT / PASSEPORT / PASAPORTE
UNITED STATES OF AMERICA
Type / Type / Tipo: P
Code / Code / Código: USA
Passport No. / No. du Passeport / No. de Pasaporte: 103959242
Surname / Nom / Apellidos: VALDEZ
Given names / Prénoms / Nombres: ILEANA DE LOS MILAGROS
Nationality / Nationalité / Nacionalidad: UNITED STATES OF AMERICA
Date of birth / Date de naissance / Fecha de nacimiento: 03 Jul 1979
Sex / Sexe / Sexo: F
Place of birth / Lieu de naissance / Lugar de nacimiento: DOMINICAN REPUBLIC
Date of issue / Date de délivrance / Fecha de expedición: 01 Oct 2002
Authority / Autorité / Autoridad: Boston Passport Agency
Date of expiration / Date d'expiration / Fecha de caducidad: 30 Sep 2012
Amendments / Modifications / Enmiendas: See Page 24

P<USAVALDEZ<<ILEANA<DE<LOS<MILAGROS<<<<<<<<
1039592425USA7907038F1209305<<<<<<<<<<<<06



☑ NEW FILING
☐ RENEWAL

**BUSINESS CERTIFICATE**
**City of Boston**

EXHIBIT 2

This Certificate Expires: __DEC 0 1 2007__
(for administrative use only)

Under the provisions of Chapter One Hundred Ten, Section Five of the General Laws, as amended, the undersigned hereby declares that a business under the title of:

__Iliana's Multiservice__
(please print)

is being conducted at: __1446 Dorchester av, Dorchester M.A.__  __02122__
ZIP CODE

BY THE FOLLOWING-NAMED
PERSONS OR CORPORATION:

| FULL NAME | CORPORATION OR RESIDENCE ADDRESS |
|---|---|
| Ileana Valdez | 40 French st apt 26 Quincy MA 02116 |

SIGNED: _[signature]_

IMPORTANT NOTICE: This Certificate expires four years from the date of issue. If you cease conducting business before that time, the law requires that you contact the City Clerk and withdraw this Certificate.

Local Telephone Number: __617-288-3200__   Type of Business __Multiservice__

**THE COMMONWEALTH OF MASSACHUSETTS**

Suffolk: ss.                                Date: __December 1, 2003__

Personally appeared before me, the above-named __Ileana De las Milagros Valdez__

On this date and made oath that the foregoing statement is true.

_[signature]_

CH. 227, sec. 5A ☐           Justice of the Peace
Seal                         Notary Public
                             My commission expires: __08/29/08__

X-6422           Non-residents: Please see reverse side.

From the Office of:

**STANDARD FORM
PURCHASE AND SALE AGREEMENT**

EXHIBIT 3

This __10th__ day of __March__ 19~~__~~ 2001

1. **PARTIES AND MAILING ADDRESSES**
   (fill in)

   Sugenis M. Diaz

   hereinafter called the SELLER, agrees to SELL and

   Elvis Presinal and Ileana Valdez

   hereinafter called the BUYER or PURCHASER, agrees to BUY, upon the terms hereinafter set forth, the following described premises:

2. DESCRIPTION
   (fill in and include title reference)

   11 Jess Street, Jamaica Plain, MA 02130

3. **BUILDINGS, STRUCTURES, IMPROVEMENTS, FIXTURES**
   (fill in or delete)

   Included in the sale as a part of said premises are the buildings, structures, and improvements now thereon, and the fixtures belonging to the SELLER and used in connection therewith including, if any, all wall-to-wall carpeting, drapery rods, automatic garage door openers, venetian blinds, window shades, screens, screen doors, storm windows and doors, awnings, shutters, furnaces, heaters, heating equipment, stoves, ranges, oil and gas burners and fixtures appurtenant thereto, hot water heaters, plumbing and bathroom fixtures, garbage disposers, electric and other lighting fixtures, mantels, outside television antennas, fences, gates, trees, shrubs, plants, and, ONLY IF BUILT IN, refrigerators, air conditioning equipment, ventilators, dishwashers, washing machines and dryers; and

   but excluding

4. **TITLE DEED**
   (fill in)
   Include here by specific reference any restrictions, easements, rights and obligations in party walls not included in (b), leases, municipal and other liens, other encumbrances, and make provision to protect SELLER against BUYER's breach of SELLER's covenants in leases, where necessary.

   Said premises are to be conveyed by a good and sufficient quitclaim deed running to the BUYER, or to the nominee designated by the BUYER by written notice to the SELLER at least seven       days before the deed is to be delivered as herein provided, and said deed shall convey a good and clear record and marketable title thereto, free from encumbrances, except
   (a) Provisions of existing building and zoning laws;
   (b) Existing rights and obligations in party walls which are not the subject of written agreement.
   (c) Such taxes for the then current year as are not due and payable on the date of the delivery of such deed;
   (d) Any liens for municipal betterments assessed after the date of this agreement;
   (e) Easements, restrictions and reservations of record, if any, so long as the same do not prohibit or materially interfere with the current use of said premises.
   (f)

5. PLANS

   If said deed refers to a plan necessary to be recorded therewith the SELLER shall deliver such plan with the deed in form adequate for recording or registration.

6. REGISTERED TITLE

   In addition to the foregoing, if the title to said premises is registered, said deed shall be in form sufficient to entitle the BUYER to a Certificate of Title of said premises, and the SELLER shall deliver with said deed all instruments, if any, necessary to enable the BUYER to obtain such Certificate of Title.

7. PURCHASE PRICE
   (fill in); space is allowed to write out the amounts if desired

   The agreed purchase price for said premises is **$265,000**                                                                       dollars, of which

   $ 1,000.00    have been paid as a deposit this day and
   $
   $ 264,000    are to be paid at the time of delivery of the deed in cash, or by certified, cashier's, treasurer's or bank check(s)

   $ 265,000    TOTAL



COPYRIGHT © 1979, 1984, 1986, 1987, 1988, 1991
GREATER BOSTON REAL ESTATE BOARD

All rights reserved. This form may not be copied or reproduced in ........ part .......... without the ........ written consent of the Greater Boston Real Estate Board.

| | | |
|---|---|---|
| 8. | TIME FOR PERFORMANCE; DELIVERY OF DEED *(fill in)* | Such deed is be delivered at ___ o'clock ___ M. on the 27th day of Apr, 19 2001, at the Registry of Deeds, unless otherwise agreed upon in writing. It is agreed that time is of the essence of this agreement. |
| 9. | POSSESSION AND CONDITION OF PREMISE. *(attach a list of exceptions, if any)* | Full possession of said premises free of all tenants and occupants, except as herein provided, is to be delivered at the time of the delivery of the deed, said premises to be then (a) in the same condition as they now are, reasonable use and wear thereof excepted, and (b) not in violation of said building and zoning laws, and (c) in compliance with provisions of any instrument referred to in clause 4 hereof. The BUYER shall be entitled personally to inspect said premises prior to the delivery of the deed in order to determine whether the condition thereof complies with the terms of this clause. |
| 10. | EXTENSION TO PERFECT TITLE OR MAKE PREMISES CONFORM *(Change period of time if desired).* | If the SELLER shall be unable to give title or to make conveyance, or to deliver possession of the premises, all as herein stipulated, or if at the time of the delivery of the deed the premises do not conform with the provisions hereof, then any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto, unless the SELLER elects to use reasonable efforts to remove any defects in title, or to deliver possession as provided herein, or to make the said premises conform to the provisions hereof, as the case may be, in which event the SELLER shall give written notice thereof to the BUYER at or before the time for performance hereunder, and thereupon the time for performance hereof shall be extended for a period of thirty days. |
| 11. | FAILURE TO PERFECT TITLE OR MAKE PREMISES CONFORM, etc. | If at the expiration of the extended time the SELLER shall have failed so to remove any defects in title, deliver possession, or make the premises conform, as the case may be, all as herein agreed, or if at any time during the period of this agreement or any extension thereof, the holder of a mortgage on said premises shall refuse to permit the insurance proceeds, if any, to be used for such purposes, then any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto. |
| 12. | BUYER's ELECTION TO ACCEPT TITLE | The BUYER shall have the election, at either the original or any extended time for performance, to accept such title as the SELLER can deliver to the said premises in their then condition and to pay therefore the purchase price without deduction, in which case the SELLER shall convey such title, except that in the event of such conveyance in accord with the provisions of this clause, if the said premises shall have been damaged by fire or casualty insured against, then the SELLER shall, unless the SELLER has previously restored the premises to their former condition, either<br>(a) pay over or assign to the BUYER, on delivery of the deed, all amounts recovered or recoverable on account of such insurance, less any amounts reasonably expended by the SELLER for any partial restoration, or<br>(b) if a holder of a mortgage on said premises shall not permit the insurance proceeds or a part thereof to be used to restore the said premises to their former condition or to be so paid over or assigned, give to the BUYER a credit against the purchase price, on delivery of the deed, equal to said amounts so recovered or recoverable and retained by the holder of the said mortgage less any amounts reasonably expended by the SELLER for any partial restoration. |
| 13. | ACCEPTANCE OF DEED | The acceptance of a deed by the BUYER or his nominee as the case may be, shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, except such as are, by the terms hereof, to be performed after the delivery of said deed. |
| 14. | USE OF MONEY TO CLEAR TITLE | To enable the SELLER to make conveyance as herein provided, the SELLER may, at the time of delivery of the deed, use the purchase money or any portion thereof to clear the title of any or all encumbrances or interests, provided that all instruments so procured are recorded simultaneously with the delivery of said deed. |
| 15. | INSURANCE *Insert amount (list additional types of insurance and amounts as agreed)* | Until the delivery of the deed, the SELLER shall maintain insurance on said premises as follows:<br>Type of Insurance                          Amount of Coverage<br>(a) Fire and Extended Coverage    "AS IS"    $<br>(b) |
| 16. | ADJUSTMENTS *(list operating expenses, if any, or attach schedule)* | Collected rents, mortgage interest, water and sewer use charges, operating expenses (if any) according to the schedule attached hereto set forth below, and taxes for the then current fiscal year, shall be portioned and fuel value shall be adjusted, as of the day of performance of this agreement and the net amount thereof shall be added to or deducted from, as the case may be, the purchase price payable by the BUYER at the time of delivery of the deed. Uncollected rents for the current rental period shall be apportioned if and when collected by either party. |

**STANDARD FORM
PURCHASE AND SALE AGREEME**

From the Office of:
CENTURY 21 PONDSIDE REALTY
619 CENTRE STREET
JAMAICA PLAIN MA 02130
617 524-6900

EXHIBIT A

This ___27TH___ day of ___JUNE___ 2003

1. **PARTIES AND MAILING ADDRESSES**
   (fill in)

   ELVIS PRESINAL, ILEANA VALDEZ
   11 JESS STREET, JAMAICA PLAIN, MA. 02130

   hereinafter called the SELLER, agrees to SELL and

   ALBERTO ROMERO
   47 DALRYMPLE STREET, JAMAICA PLAIN, MA. 02130

   hereinafter called the BUYER or PURCHASER, agrees to BUY, upon the terms hereinafter set forth, the following described premises: LAND AND BUILDING KNOWN AND NUMBERED AS

2. **DESCRIPTION**
   (fill in and include title reference)

   68 WILLIAMS STREET, JAMAICA PLAIN, MA. 02130

3. **BUILDINGS, STRUCTURES, IMPROVEMENTS, FIXTURES**
   (fill in or delete)

   Included in the sale as a part of said premises are the buildings, structures, and improvements now thereon, and the fixtures belonging to the SELLER and used in connection therewith including, if any, all wall-to-wall carpeting, drapery rods, automatic garage door openers, venetian blinds, window shades, screens, screen doors, storm windows and doors, awnings, shutters, furnaces, heaters, heating equipment, stoves, ranges, oil and gas burners and fixtures appurtenant thereto, hot water heaters, plumbing and bathroom fixtures, garbage disposers, electric and other lighting fixtures, mantels, outside television antennas, fences, gates, trees, shrubs, plants, and, ONLY IF BUILT IN, refrigerators, air conditioning equipment, ventilators, dishwashers, washing machines and dryers; and

   but excluding

4. **TITLE DEED**
   (fill in)
   *Include here by specific reference any restrictions, easements, rights and obligations in party walls not included in (b), leases, municipal and other liens, other encumbrances, and make provision to protect SELLER against BUYER's breach of SELLER's covenants in leases, where necessary.

   Said premises are to be conveyed by a good and sufficient quitclaim deed running to the BUYER, or to the nominee designated by the BUYER by written notice to the SELLER at least seven ___7___ days before the deed is to be delivered as herein provided, and said deed shall convey a good and clear record and marketable title thereto, free from encumbrances, except
   (a) Provisions of existing building and zoning laws;
   (b) Existing rights and obligations in party walls which are not the subject of written agreement;
   (c) Such taxes for the then current year as are not due and payable on the date of the delivery of such deed;
   (d) Any liens for municipal betterments assessed after the date of this agreement;
   (e) Easements, restrictions and reservations of record, if any, so long as the same do not prohibit or materially interfere with the current use of said premises;
   *(f)

5. **PLANS**

   If said deed refers to a plan necessary to be recorded therewith the SELLER shall deliver such plan with the deed in form adequate for recording or registration.

6. **REGISTERED TITLE**

   In addition to the foregoing, if the title to said premises is registered, said deed shall be in form sufficient to entitle the BUYER to a Certificate of Title of said premises, and the SELLER shall deliver with said deed all instruments, if any, necessary to enable the BUYER to obtain such Certificate of Title.

7. **PURCHASE PRICE**
   (fill in); space is allowed to write out the amounts if desired

   The agreed purchase price for said premises is  FIVE-HUNDRED THOUSAND
   DOLLARS and 00/100--------------------------------------- dollars, of which
   $         500.00  have been paid as a deposit this day and
   $      24,500.00  FROM BUYER AT PURCHASE & SALE AGREEMENT
   $     475,000.00  are to be paid at the time of delivery of the deed in cash, or by certified, cashier's, treasurer's or bank check(s).
   $_____
   $     500,000.00  TOTAL

COPYRIGHT © 1979, 1984, 1986, 1987, 1988, 1991
GREATER BOSTON REAL ESTATE BOARD
Rev. 1999          Form No. R3576



All rights reserved. This form may not be copied or reproduced in whole or in part in any manner whatsoever without the prior express written consent of the Greater Boston Real Estate Board.    CWV 50

| | | |
|---|---|---|
| TIME FOR PERFORMANCE; DELIVERY OF DEED *(fill in)* | Such deed to be delivered at 12:00 o'clock P. M. on the 15TH day of JULY 2003, at the Suffolk County Registry of Deeds, unless otherwise agreed upon in writing. It is agreed that time is of the essence of this agreement. | |
| 9. POSSESSION AND CONDITION OF PREMISE. *(attach a list of exceptions, if any)* | Full possession of said premises FULL all tenants and occupants, except as herein provided, is to be delivered at the time of the delivery of the deed, said premises to be then (a) in the same condition as they now are, reasonable use and wear thereof excepted, and (b) not in violation of said building and zoning laws, and (c) in compliance with provisions of any instrument referred to in clause 4 hereof. The BUYER shall be entitled to personally enter said premises prior to the delivery of the deed in order to determine whether the condition thereof complies with the terms of this clause. 2ND AND ~~3RD~~ FLOOR APT TO BE DELIVERED VACANT ON OR BEFORE CLOSING | |
| 10. EXTENSION TO PERFECT TITLE OR MAKE PREMISES CONFORM *(Change period of time if desired).* | If the SELLER shall be unable to give title or to make conveyance, or to deliver possession of the premises, all as herein stipulated, or if at the time of the delivery of the deed the premises do not conform with the provisions hereof, then any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto, unless the SELLER SHALL use reasonable efforts to remove any defects in title, or to deliver possession as provided herein, or to make the said premises conform to the provisions hereof, as the case may be, in which event the SELLER shall give written notice thereof to the BUYER at or before the time for performance hereunder, and thereupon the time for performance hereof shall be extended for a period of thirty 30 days. | |
| 11. FAILURE TO PERFECT TITLE OR MAKE PREMISES CONFORM, etc. | If at the expiration of the extended time the SELLER shall have failed so to remove any defects in title, deliver possession, or make the premises conform, as the case may be, all as herein agreed, or if at any time during the period of this agreement or any extension thereof, the holder of a mortgage on said premises shall refuse to permit the insurance proceeds, if any, to be used for such purposes, then any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto. | |
| 12. BUYER's ELECTION TO ACCEPT TITLE | The BUYER shall have the election, at either the original or any extended time for performance, to accept such title as the SELLER can deliver to the said premises in their then condition and to pay therefore the purchase price without deduction, in which case the SELLER shall convey such title, except that in the event of such conveyance in accord with the provisions of this clause, if the said premises shall have been damaged by fire or casualty insured against, then the SELLER shall, unless the SELLER has previously restored the premises to their former condition, either<br>(a) pay over or assign to the BUYER, on delivery of the deed, all amounts recovered or recoverable on account of such insurance, less any amounts reasonably expended by the SELLER for any partial restoration, or<br>(b) if a holder of a mortgage on said premises shall not permit the insurance proceeds or a part thereof to be used to restore the said premises to their former condition or to be so paid over or assigned, give to the BUYER a credit against the purchase price, on delivery of the deed, equal to said amounts so recovered or recoverable and retained by the holder of the said mortgage less any amounts reasonably expended by the SELLER for any partial restoration. | |
| 13. ACCEPTANCE OF DEED | The acceptance of a deed by the BUYER or his nominee as the case may be, shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, except such as are, by the terms hereof, to be performed after the delivery of said deed. | |
| 14. USE OF MONEY TO CLEAR TITLE | To enable the SELLER to make conveyance as herein provided, the SELLER may, at the time of delivery of the deed, use the purchase money or any portion thereof to clear the title of any or all encumbrances or interests, provided that all instruments so procured are recorded simultaneously with the delivery of said deed. | |
| 15. INSURANCE *\*Insert amount (list additional types of insurance and amounts as agreed)* | Until the delivery of the deed, the SELLER shall maintain insurance on said premises as follows: | |

| | Type of Insurance | Amount of Coverage |
|---|---|---|
| | (a) Fire and Extended Coverage | *$ AS PRESENTLY INSURED |
| | (b) | |

| | | |
|---|---|---|
| 16. ADJUSTMENTS *(list operating expenses, if any, or attach schedule)* | Collected rents, mortgage interest, water and sewer use charges, operating expenses (if any) according to the schedule attached hereto or set forth below, and taxes for the then current fiscal year, shall be apportioned and fuel value shall be adjusted, as of the day of performance of this agreement and the net amount thereof shall be added to or deducted from, as the case may be, the purchase price payable by the BUYER at the time of delivery of the deed. Uncollected rents for the current rental period shall be apportioned if and when collected by either party. | |

Copyright © 1979, 1984, 1986, 1987, 1988, 1991 Greater Boston Real Estate Board. All rights reserved.

| | | |
|---|---|---|
| | ADJUSTMENT OF UNASSESSED AND ABATED TAXES | If the amount of said taxes is not known at the time of the delivery of the deed, they shall be apportioned on the basis of the taxes assessed for the preceding fiscal year, with a reapportionment as soon as the new tax rate and valuation can be ascertained, and, if the taxes which are to be apportioned shall thereafter be reduced by abatement, the amount of such abatement, less the reasonable cost of obtaining the same, shall be apportioned between the parties, provided that neither party shall be obligated to institute or prosecute proceedings for an abatement unless herein otherwise agreed. |
| 18. | BROKER's FEE *(fill in fee with dollar amount or percentage; also name of Brokerage firm(s))* | A Broker's fee for professional services of  5% OF THE SALE PRICE ($25,000.00) is due from the SELLER to CENTURY 21 PONDSIDE REALTY

the Broker(s) herein, but if the SELLER pursuant to the terms of clause 21 hereof retains the deposits made hereunder by the BUYER, said Broker(s) shall be entitled to receive from the SELLER an amount equal to one-half the amount so retained or an amount equal to the Broker's fee for professional services according to this contract, whichever is the lesser. |
| 19. | BROKER(S) WARRANTY *(fill in name)* | The Broker(s) named herein  CENTURY 21 PONDSIDE REALTY warrant(s) that the Broker(s) is(are) duly licensed as such by the Commonwealth of Massachusetts. |
| 20. | DEPOSIT *(fill in name)* | All deposits made hereunder shall be held in escrow by CENTURY 21 PONDSIDE REALTY as escrow agent subject to the terms of this agreement and shall be duly accounted for at the time for performance of this agreement. In the event of any disagreement between the parties, the escrow agent may retain all deposits made under this agreement pending instructions mutually given in writing by the SELLER and the BUYER. |
| 21. | BUYER's DEFAULT; DAMAGES | If the BUYER shall fail to fulfill the BUYER's agreements herein, all deposits made hereunder by the BUYER shall be retained by the SELLER as liquidated damages unless within thirty days after the time for performance of this agreement or any extension hereof, the SELLER otherwise notifies the BUYER in writing. |
| 22. | RELEASE BY HUSBAND OR WIFE | The SELLER's spouse hereby agrees to join in said deed and to release and convey all statutory and other rights and interests in said premises. |
| 23. | BROKER AS PARTY | The Broker(s) named herein join(s) in this agreement and become(s) a party hereto, insofar as any provisions of this agreement expressly apply to the Broker(s), and to any amendments or modifications of such provisions to which the Broker(s) agree(s) in writing. |
| 24. | LIABILITY OF TRUSTEE, SHAREHOLDER, BENEFICIARY, etc. | If the SELLER or BUYER executes this agreement in a representative or fiduciary capacity, only the principal or the estate represented shall be bound, and neither the SELLER or BUYER so executing, nor any shareholder or beneficiary of any trust, shall be personally liable for any obligation, express or implied, hereunder. |
| 25. | WARRANTIES AND REPRESENTA-TIONS *(fill in); if none, state "none"; if any listed, indicate by whom each warranty or representation was made* | The BUYER acknowledges that the BUYER has not been influenced to enter into this transaction nor has he relied upon any warranties or representations not set forth or incorporated in this agreement or previously made in writing, except for the following additional warranties and representations, if any, made by either the SELLER or the Broker(s):

NONE |
| 26. | MORTGAGE CONTINGENCY CLAUSE *(omit if not provided for in Offer to Purchase)* | In order to help finance the acquisition of said premises, the BUYER shall apply for a conventional bank or other institutional mortgage loan of $   450,000.00   at prevailing rates, terms and conditions. If despite the BUYER's diligent efforts a commitment for such loan cannot be obtained on or before   JULY 8  , 2003 the BUYER may terminate this agreement by written notice to the SELLER and/or the Broker(s), as agent(s) for the SELLER, prior to the expiration of such time, whereupon any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto. In no event will the BUYER be deemed to have used diligent efforts to obtain such commitment unless the BUYER submits a complete mortgage loan application conforming to the foregoing provisions on or before   JUNE 30  , 2003. |

|     | CONSTRUCTION OF AGREEMENT | This instrument, executed in multiple counterparts, is to be construed as a Massachusetts contract, is to take effect as a sealed instrument, sets forth the entire contract between the parties, is binding upon and enures to the benefit of the parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be cancelled, modified or amended only by a written instrument executed by both the SELLER and the BUYER. If two or more persons are named herein as BUYER their obligations hereunder shall be joint and several. The captions and marginal notes are used only as a matter of convenience and are not to be considered a part of this agreement or to be used in determining the intent of the parties to it. |
|-----|---|---|
| 28. | LEAD PAINT LAW | The parties acknowledge that, under Massachusetts law, whenever a child or children under six years of age resides in any residential premises in which any paint, plaster or other accessible material contains dangerous levels of lead, the owner of said premises must remove or cover said paint, plaster or other material so as to make it inaccessible to children under six years of age. |
| 29. | SMOKE DETECTORS | The SELLER shall, at the time of the delivery of the deed, deliver a certificate from the fire department of the city or town in which said premises are located stating that said premises have been equipped with approved smoke detectors in conformity with applicable law. |
| 30. | ADDITIONAL PROVISIONS | The initialed riders, if any, attached hereto, are incorporated herein by reference. |

FOR RESIDENTIAL PROPERTY CONSTRUCTED PRIOR TO 1978, BUYER MUST ALSO HAVE SIGNED
LEAD PAINT "PROPERTY TRANSFER NOTIFICATION CERTIFICATION"

NOTICE: This is a legal document that creates binding obligations. If not understood, consult an attorney.

_____    _____
SELLER (or spouse)  ILEANA VALDEZ   SELLER           ELVIS PRESINAL
Taxpayer ID/Social Security No. _____   Taxpayer ID/Social Security No. _____

_____    _____
BUYER             ALBERTO ROMERO    BUYER
Taxpayer ID/Social Security No. _____   Taxpayer ID/Social Security No. _____

CENTURY 21 PONDSIDE REALTY    Broker(s)

EXHIBIT 5

# PURCHASE AND SALE AGREEMENT
# SALE BY OWNER

**DATE:**
This Agreement is made on the   **12**<sup>th</sup>   day of   **May**   2002

**PARTIES AND MAILING ADDRESS:**
**Ileana Valdez**   of
40 French Street, Apt. #26
Quincy, MA 02169
Hereinafter called the SELLER, agrees to SELL and
**Lucette Cameron**   of
162 Centre Street, Apt. #1
Roxbury, MA 02119
Hereinafter called the BUYER or PURCHASER, agrees to BUY, upon the terms
hereinafter set forth, the following Business:

**DESCRIPTION:**
**Iliana's Multiservice**   of
1446 Dorchester Avenue,
Dorchester, MA 02122
Said business shall include the inventory (as attached) and the licenses, rights and permits
to be engaged in and to continue the current business which includes, but does not limit
to the Authorized Dealership for cellular phone and service for AT&T, Nextel and T-
Mobile; Sale of prepaid phone, cards and accessories; Sale and bill payment services of
local phones; Sale and service of beepers; Mail box rental and services; Printing, copy
and laminating services; Fax services and other related services and sale.

The business shall be free from all encumbrances, except:
   (a) Provisions of existing building and zoning laws;
   (b) Existing rights and obligations in party walls which are not the subject of written
       agreement;
   (c) All taxes and liens currently at the time of sale;
   (d) Easements, restrictions and reservations of records, if any, so long as the same do
       not prohibit or materially interfere with the current use of said premises

**TIME AND PERFORMANCE:**
The time and performance for the purchase shall be on or before   **June 5,**   **2004** at
**10:00 AM** at 1448 Dorchester Avenue MA unless otherwise agreed upon in writing.

**POSSESSION AND CONDITION OF BUSINESS AND PREMISES:**
Full possession is to be delivered at the closing. The said premises to be in the same
condition as is, with reasonable use and wear thereof expected and that the basement is in
a broom sweep condition.

**EXTENSION TO TIME OF PREFORMANCE:**
If the SELLER is unable to make conveyance, or to deliver possession of the premises at the time or with the conditions agreed upon, then any payments made under this agreement shall be forthwith refunded and all obligations of the parties hereto, shall cease and this agreement shall be void without recourse to the parties hereto, unless the BUYER and SELLER agree to an extension for a period  15  days.

**ADJUSTMENTS:**
Collected fees, interests and other operation expenses (if any) may be apportioned and adjusted as of the day of performance of this agreement and the net amount thereof shall be added to or deducted from, as the case may be.

**PERSONAL PROPERTY:**
All equipment, supplies and other tangible property owned by the SELLER now being used in connection with the maintenance and operation of the premises and not consumed in the ordinary course of operations prior to the sale shall be transferred in as in condition by the SELLER to the BUYER at the time of such delivery by bill of sale in customary form without additional cost or charge to the BUYER.

This sale includes the alarm system and payment for its service for the next seven months.

This sale excludes the photo copy machine which is currently on lease by the SELLER.

**PURCHASE PRICE AND TERMS OF PAYMENT:**
The agreed purchase price for this business is:     $23,500.00
**Twenty two thousand, five hundred -------------------------------------------/00dollars**

| | |
|---|---|
| $2,500.00 | Two thousand, five hundred dollars paid at the time of this agreement. |
| $7,500.00 | To be paid at the time of performance. |
| $3,500.00 | To be paid on or before July 31, 2004. |
| $10,000.00 | To be paid on or before December 31, 2004 |

This agreement is made and signed by the following parties:

_[signature]_                                                        5/12/04
**SELLER: Ileana Valdez**                                  **Date:**


**BUYER: Lucette Cameron**                            **Date:**